## DAVID WENTWORTH *vs.* THOMAS G. WENTWORTH.

A motion in arrest of judgment after verdict, is a regular and valid proceeding under the code, without an express statute, and Sec. 39, page 356, Revised Statutes, as amended on page 11, amendment of 1852, expressly and in terms recognizes the power of the Court to entertain such a motion.

A. settled upon land and improved it, and allowed B. his brother, to enter it in his own name, under a parol agreement that he (B) would convey it to A when A repaid the purchase money.—*Held*, that whether A borrowed the money from B, and paid the price of the land with it, or whether B paid his own money for it, the arrangement can in neither case be held to create, or result, in a trust, in favor of A. Because, in the first case, no trust could have arisen in favor of A, Sections 7 and 8 of Chap. 44 of Revised Statutes, pages 202-3, declaring that no such trust shall result; and in the latter case, express trusts conveying lands, can only be [created for certain purposes, and "by deed or conveyance in writing," &c., under R. S., page 203, Sec. 11, also page 267, Sec. 6.

The arrangement was simply a parol agreement to convey the land when A should pay B the purchase price, and is within the Statute of Frauds and cannot be enforced, unless it be partly performed.

Mere continuance in possession of the land, after such an agreement, which was the result of the Plaintiff's original possession and entry, and not solely with a view to the performance of the agreement, is not such a part-performance as will take it out of the Statute. The acts must refer to, and result from the agreement, and such as he would not have performed, unless on account of the agreement, to take it out of the Statute.

It seems that the want of an allegation in the complaint, of part performance of such agreement, might be cured by verdict, if it did not clearly appear from the record that no evidence of such part performance was offered.

The Defendant is only bound to plead the Statute of Frauds, when it does not appear from the complaint that the contract was by parol. And when it does so appear, and no part performance is alleged to take it out of the Statute, the complaint is demurrable, and the Defendant is not bound to plead the Statute.

This was an appeal from an order of the District Court of Washington County, allowing a motion in arrest of judgment.

David Wentworth, the Plaintiff below, brought suit against his brother, the Defendant, for the specific performance of a

parol agreement to convey certain lands, under the following circumstances:

He alleges that he had settled upon the land in question, *had improved and cultivated it, and had continued to reside thereon up to the time of the commencement of the action.* That the Defendant had offered to advance and loan him a sum of money sufficient to enter the land at the U.S. Land Office, and that he (Pl'ff,) might pay it back at any time within one year thereafter, and that such offer was accepted. That it was agreed that the Defendant should enter or purchase the land for the Plaintiff, but that Defendant might enter it in his own name, to secure the repayment of the loan. That the purchase and entry was so made, and that the Plaintiff, relying on the good faith and integrity of his brother, did not receive or demand from him any bond or other instrument containing such agreement. That the Plaintiff tendered the amount of the purchase money and interest within the year, &c., but that Defendant refused to convey.

Issue was joined upon the main facts, and the jury returned a verdict for the Plaintiff. The Defendant afterwards moved for a new trial, which was denied, and afterwards moved in arrest of judgment upon the verdict, which latter motion was sustained. The Plaintiff appeals.

The following are the points and authorities relied upon by the Appellant:

*First.* There is no provision made by our Code, for a motion in arrest of judgment. *See Ch.* 71, *Sec.* 58, *Rev. Stat. Min.* 3 *Abb. Pr. R.* 428 ; *Snell vs. Snell.*

*Second.* Where the Statute of Frauds is relied upon as a defence, the Defendant must plead the same in his answer, and not having done so, he is deemed to have renounced it. *See* 5 *Wendell,* 638 ; *Harris vs. Knickerbocker* ; 2, *Paige, Chy. Rep.* 177; *Cozine vs. Graham, & als.*; 2 *Sanford's Chy. Rep.* 153; *Vanpell vs. Woodward.*

*Third.* The facts stated in the complaint show a part performance on the part of the Plaintiff and Defendant, of the contract or agreement, sufficient to take the case out of the Statute of Frauds. 4. *Comstock's Reports, p.* 407; *Mallens*

*vs. Brown, Sec.* 1. *Sandford's Chy. Rep. p.* 579; 3 *Barbour's Chy. Rep. p.* 407.

*Fourth.*  The Complaint shows a state of facts raising a complete trust, and that the Defendant was the agent and Trustee of the Plaintiff in purchasing the land.  *See* 5 *Wendell, Rep.* 638; *Harris vs. Knickerbocker,* 1. *Paige Chy. Rep.* 147: *Brown vs. Lynch,* 6, *Paige Chy. Rep.* 355; *Sweet vs. Jacox, Jeremy's Eq. Jar.* 393–4; 13 *Veasy, Rep.* 95; *Whitcomb vs. Wincher,* 1 *Johnson Chy. R.* 394; *Parkhurst vs. Alexander,* 1 *same Chy. R.* 582; *Boyd vs. M'Lean.*

*Fifth.*  The Courts will not so construe the Statute of Frauds as by its operation to perpetuate a fraud. (See authorities above cited.)

The following are the points and authorities presented by the Respondent:

*First.*  The power and authority to arrest a judgment are inherent in a court of law, unless the same are expressly taken away by statute; but such power and authority are expressly given to the Court under the Minnesota Code.  *Stat. Minn.* 1851, *p.* 360, *secs.* 67–8; *ib. p.* 337, *sec.* 65; *Gould's Plead. chap.* 10, *p.* 492; 1 *Chitty's Pleadings, p.* 656; 3 *Blackstone's Com.* 387, 393–5; 16 *Johns. R.* 146; 3 *Foster (N. H.)* 171; *Burnham vs. De Benvose et al.,* 8 *How. Pr. R.* 159.

*Second.*  When an action is found so upon an agreement which would be void under the Statute of Frauds unless in writing and subscribed by the party to be charged, these facts, as constituting in part the cause of action, must be viewed in the complaint.  2 *Deuer's Rep.* 609, 620; *Leading Cases in Equity, Hare and Wallace's Notes, vol.* 2, *part* 1, *pp.* 540–2.

*Third.*  This is an action for the specific performance of a parol contract for an estate in land: and the complaint expressly alleges that at no time did the Plaintiff "require, demand, receive or take from the Defendant any bond or other instrument in writing embodying or containing the agreement" set out in this complaint; and therefore on its face shows there is no cause of action against Defendant—because, by our statute: "No estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over

or concerning lands or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering or declaring the same, or by their lawful agent thereunto authorized, in writing." "The preceding section shall not be construed to effect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law."— *Statutes Minn.* 1851, *p.* 267, *secs.* 6, 7; *Brown on Statute of Frauds* (new work, 1857), *p.* 77; *Simonds vs. Catlin*, 2 *Caine* (*N. Y.*) 61, as to the meaning of the words " act and implication of law."

*Fourth.* The unwritten parol contract set up in the complaint is wholly and entirely executory in its nature and terms; and there never was, at any time, a partial performance thereof, by either party, of a kind in its nature or extent sufficient to take the same out of the statute, if any part performance could under the law ever have that effect.

*Fifth.* If the principle of trust arises at all in this action, it is in its nature an express trust, under subdivision 5, Section 11, Chapter XLIV. Statutes of Minnesota 1851, page 203, and therefore must be expressed in some instrument in writing creating it. If the complaint shows an express trust, the same cuts off any resulting or implied trust. *Stat. Minn.* 1851, *p.* 203, *sec.* 11; *Wright vs. Douglas*, 3 *Seld. p.* 564; *Brown on Statute of Frauds, sec.* 92; *Snyder on Venders and Purchasers*, 911.

*Sixth.* The complaint shows that the purchase of the land made by Defendant was made by him with his own money, without a loan thereof to Plaintiffs, and therefore no express trust arises; and that the parol agreement between the parties that Plaintiff should have the right to purchase the land from the Defendant, does not entitle the Plaintiff to a decree for the land, for the parol agreement is cut off by the Statute of Frauds. *Reese et al. v. Stain et al.*, 14 *Ill. R. p.* 94.

*Seventh.* The complaint states no facts from which a trust

arises, or results by implication or operation of law.  *Stat. of Minn.* 1851, *p.* 202, *secs.* 1, 6–8; *Brown's Statute of Frauds, secs.* 89, 90, 94–5, 77; *Getman vs. Getman,* 1 *Barb. Ch. Rep.* 499; *Steere vs. Steere,* 5 *Johns. Ch. R.* 405; *Rogers vs. Murray,* 3 *Paige,* 390; 2 *Wend.* 570; *Leman vs. Whitley,* 4 *Russ. Ch.* 423; 1 *Hilliard's Real Prop.* 318; *Willards Eq.* 416; 4 *Kent* (7*th ed.*) 318, *n.; Garfield vs. Hatmaker,* 15 *N. Y. R. Court of Appeals; Smith, p.* 476 (*June Term,* 1857); *Miller vs. Cottsr,* 5 *Georgia R.* 341; *Leading Cases in Equity, Hare and Wallace's Notes, vol.* 2, *p't* 1, *pp.* 560–5.

*Eighth.*  This case being one concerning neither dower, nor curtesy, nor remitter, is not one wherein an estate arises "by an act or operation of law."  And even if the complaint showed —which it does not, but directly otherwise—that the land was bought with Plaintiff's money, no trust could arise or result by implication of law under our statute; for Statutes of Minnesota 1851, page 202, Section 7, provides:  "When a grant for a valuable consideration shall be paid by another, no use nor trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyances, subject only to the provisions of the next section."  *Garfield vs. Hatmaker,* 15 *N. Y. Rep. p.* 476, before referred to.

*Ninth.*  The complaint shows there was no consideration for the contract set out therein, and therefore said contract is void. *Willard's Equity Jurisprudence,* 266–7, and cases there cited.

*Tenth.*  The contract or agreement in the complaint set out is not mutual in its character, nor certain in its terms, and is therefore void.  *Willard's Eq. Jur.* 267, 286, and cases there cited.

*Eleventh.*  The complaint, upon its face, shows that at the time of the commencement of this action the title to the land in controversy was in the United States; therefore, the Court has no jurisdiction of the subject-matter, and cannot compel Defendant to convey a title which was in the United States.

*Twelfth.*  The complaint does not state facts which constitute a cause of action.

VAN ETTEN & OFFICER, Counsel for Appellant.

BABCOCK & COTTON, Counsel for Respondent.

*By the Court.*—FLANDRAU, J. The questions presented by this case are whether the District Court had power under the Territorial organization, to arrest the entry of a judgment after verdict, and if so, whether that power has been properly exercised in this action.

The power has always been exercised, by the common law Courts in England and this country, as necessarily appurtenant to their control over the causes depending in them, and after verdict where the declaration was insufficient the suit was dismissed altogether; and where the verdict was for the Defendant, where the plea confessed the cause of action, the Courts would render judgment for the Plaintiff without regard to the verdict, which was called a judgment *non obstante veredicto.* 2 *Chitty's Pleadings,* 656.

Blackstone says that "notwithstanding the issue of fact being regularly decided, if it appears that the complaint, was not actionable in itself, or not made with sufficient precision and accuracy, the party may supersede it by arresting or staying the judgment." 3 *Black Com.* 299.

It would seem that the same powers were intended to be vested in the District Courts of the Territory as necessary to their proper administration of Justice. There are some defects in pleadings which cannot even by the consent of the parties be waived or rectified, and to allow a judgment to be entered upon such a basis would be simply absurd. The Courts must have the power to arrest the judgment when the verdict leaves the cause of action or defence without any foundation in law. For instance, if the complaint shows that the Court has no jurisdiction of the subject matter of the action, and the verdict is for the plaintiff, it would be an idle farce to allow judgment to be perfected upon the verdict. *See R. S. page* 337, *Sec.* 65, *also page* 360, *Sec.* 67 *& 68; Sec.* 39 *on p.* 356, *as amended on page* 11 *of the amendments,* expressly and in terms recognizes the power of the Court to entertain a motion in arrest of judgment after verdict.

The remaining question narrowed itself down to the one point, of whether the agreement set out in the complaint, has been partly performed, so as to take it out of the operation of the statute of frauds. The Defendant has not waived the effect

of the statute of frauds as claimed by the Plaintiff. He was only bound to plead it in defence when it did not appear in the complaint that the contract was by parol. Where it does so appear and no part performance is alleged to take it out of the statute, the Defendant is not bound to plead the statute, the complaint is demurrable, and materially defective. *See Cozine vs. Graham & Bleeker*, 2 *Paige, Ch. R.* 177; *Harris vs. Knickerbocker*, 5 *Wend.* 638.

· The complaint shows that the Plaintiff had settled upon government lands, and had improved an eighty acre piece to the amount of seven hundred dollars, and was in the possession of it, on the 18th of November, 1852, at which time he allowed his brother to enter it at the land office in his own name, under the parol agreement that he would convey it to him when he paid the purchase price. I do not see how it can materially effect the question, whether the Plaintiff borrowed the money from the Defendant and paid the price of the land with it, or whether the Defendant paid the price with his own money, because in the first case no trust could have arisen from the fact in favor of the Plaintiff under our statutes, because Sections 7 and 8 of Chapter 44, of the R. S. page 202–3 expressly declares that no such trust shall result, and in the latter case, if the Defendant paid for the land with his own money, then his agreement that he purchased for the Plaintiff could create no trust, because express trusts concerning lands can only be created for certain purposes and by " deed or conveyance in writing subscribed by the party," &c. *R. S. page* 203, *Sec.* 11, *Also page* 267, *Sec.* 6. So in neither view can I see how the arrangement can be held to create, or result in a trust in favor of the Plaintiff. It is simply a parol agreement to convey the land to the Plaintiff, when he should pay the Defendants the purchase price which he had paid out for it. This contract is clearly within the statute of frauds standing alone and cannot be enforced unless it has been partly performed.

I have searched the complaint with great care to find some act of the Plaintiff performed under the contract, in order to relieve him from the effect of the statute, but all that appears to have ever taken place subsequently to the contract is the allegation in the beginning of the third folio that the Plaintiff

has " continued to improve and cultivate the same, and has resided thereon with his family up to the present time;" which in the connection in which it is used in the complaint, includes the time since he first settled upon the land until the commencement of the action, or in other words that the Plaintiff remained upon the land after the agreement up to the time of the commencement of the suit, in the same manner in which he had previously been upon it. This is all that appears to have been done by the Plaintiff, in reference to the land after the purchase by the Defendant. Does this take the case out of the statute?

" In order to make the acts such as a court of Equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to be done solely with a view to the agreement being performed, for if they are acts that might have been done with other views they will not take the case out of the statute, since they cannot properly be said to be done by way of part performance of the agreement." 2 *Story Equity Jurisprudence, Sec. 762, and numerous cases cited.*

*In Phillips vs. Thompson,* 1 *John, Ch. Rep. at p.* 149 *marginal,* Chancellor Kent says, " It is well settled that if a party sets up part performance to take a parol agreement out of the statute (of frauds) he must show acts unequivocally referring to and resulting from *that* agreement, such as the party would not have done unless on account of that very agreement, and with direct view to its performance," and he cites many authorities in his support. The same doctrine is frequently held through the Chancery Reports and there is no doubt about its being the correct one.

Under these rules it is hard to see how the mere continuance in the possession of land, can be attributed to the making of the contract, and as in performance of it; and it is quite easy to see that it was the result of the original entry and possession. The silence of the complaint as to the purpose with which the possession was continued seems to destroy all reason for supposing that it was done in performance of the agreement. If such had been the case in fact the pleader would not have omitted to have so alleged it, as it was the vital fact to

the support of his cause of action. I have endeavored to make the point for the Appellant that the defect in the pleadings is cured by the verdict, and am willing to go as far in this case as any I have ever considered to reverse the order arresting the judgment; but in order to do so, this Court must presume that the defect in the complaint of the want of an allegation of part performance of the contract has been supplied by the proof at the trial. If the case came to this Court directly from the verdict on Appeal or by writ of Error, I should find no difficulty in so presuming, as the allegation that the Plaintiff "continued to improve and cultivate the same, and reside thereon with his family up to the present time," standing alone, leads the mind to believe that the fact that it was done in part performance of the contract, although not pleaded, was proven on the trial, and would justify the presumption; but in the shape in which this case comes to us the presumption is destroyed. The record shows that a motion was made for a non-suit, on several grounds, among which was one that "no proof had been offered to show a part performance of the alleged contract," bringing to the mind of the Court the question whether this defect had been supplied by proof or not. The motion in arrest of judgment was, then, made before the same judge who tried the cause, and who knew whether or not such proof had been made, and was by him granted. As the question of part performance having been proved is the one upon which the motion must have turned, or was one which could not have failed to have been considered by the Court, it would be quite too violent a presumption for this Court to make that it had been proven, when the judge who tried the case held that it had not.

The Plaintiff, in his fraternal but misplaced confidence, has submitted his property to his brother's keeping, relying on his honor, affection and integrity to restore it, and if he feels willing to incur the odium of sending his name to posterity as a violator of so sacred a trust, we must reluctantly confess our inability under the law to prevent him.

The order should be affirmed.